UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 21-15685 JGR |
| PERKY JERKY, LLC. | ) | |
| EIN: | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |

**NOTICE OF FILING OF STALKING HORSE BID**

PLEASE TAKE NOTICE that the Debtor hereby files the stalking horse bid.

DATED: February 23, 2022        Respectfully submitted,

                                                 By: /s/ Aaron A. Garber
                                                      Aaron A. Garber #36099
                                                      **Wadsworth Garber Warner Conrardy, P.C.**
                                                      2580 West Main Street, Suite 200
                                                      Littleton, CO 80120
                                                      Telephone: (303) 296-1999
                                                      Telecopy: (303) 296-7600
                                                      Email: agarber@wgwc-law.com

## CERTIFICATE OF SERVICE

  The undersigned certifies that on February 23, 2022, I served by prepaid first class mail or ECF a copy of the **NOTICE OF FILING OF STALKING HORSE BID** on all parties against whom relief is sought and those otherwise entitled to service pursuant to FED.R.BANKR.P. and these L.B.R. at the following addresses:

Shawn Christianson schristianson@buchalter.com, cmcintire@buchalter.com
Alan K. Motes Alan.Motes@usdoj.gov
Sanford P. Rosen srosen@rosenpc.com
US Trustee USTPRegion19.DV.ECF@usdoj.gov
Deanna L. Westfall deanna.westfall@coag.gov,
Robert.padjen@coag.gov;jade.darnell@coag.gov
Angela Rose Whitford angie@goodspeedmerrill.com

            By: */s/ Nichole Garber*
            For Wadsworth Garber Warner Conrardy, P.C.

## ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT ("**Agreement**") is made to be effective as of February ___, 2022 ("**Effective Date**"), by and between Perky Jerky, LLC ("**Seller**"), a Delaware limited liability company that is a debtor and as debtor-in-possession in a chapter 11 case, Case No. 21-15685 JGR (the "**Case**"), pending in the United States Bankruptcy Court for the District of Colorado (the "**Court**"), and RS2, LLC, a Colorado limited liability company, or its designee ("**Buyer**").

Defined terms used in this Agreement but not defined herein have the meaning set forth in the *Perky Jerky LLC Bid Procedures* (the "**Bid Procedures**") [Docket. No. ____] in the Case.

### WITNESETH:

A.  **WHEREAS**, on November 15, 2021, Seller filed in the Court its Voluntary Petition pursuant to Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**");

B.  **WHEREAS**, Seller will continue, prior to the Closing (as defined below), in the possession and control of its assets and in the management of its jerky product business (the "**Business**"), pursuant to §§ 1107 and 1108 of the Bankruptcy Code;

C.  **WHEREAS**, Seller wishes to sell its assets described herein to Buyer free and clear of all Encumbrances (defined herein) in such assets in exchange for cash and other consideration as herein provided;

D.  **WHEREAS**, Buyer wishes to acquire such assets of Seller as hereinafter more fully set forth; and

E.  **WHEREAS**, the transaction contemplated shall be consummated pursuant to the terms and conditions of this Agreement and the Sale Approval Order (as defined herein).

**NOW, THEREFORE**, in consideration of the premises and of the mutual covenants and agreements hereinafter set forth, the parties hereto mutually covenant and agree as follows:

### ARTICLE I.
### ASSETS TO BE PURCHASED

**Section 1.01   Purchase and Sale of Assets.** Subject to the terms and conditions set forth, at the Closing, Seller shall sell, assign, transfer, convey, and deliver to Buyer, and Buyer shall purchase from Seller, free and clear of any and all liabilities, pledges, liens, mortgages, security interests, encumbrances, claims, and/or interests of any kind or nature whatsoever claims (collectively, the "**Encumbrances**"), all of Seller's right, title and interest in, to and under all of the assets, properties, and rights of every kind and nature, whether real, personal or mixed, tangible or intangible (including goodwill), wherever located and whether now existing or hereafter acquired (other than the Excluded Assets as defined herein), which relate to, or are used or held for use in connection with, the Business as set forth on Schedule 1.01 (collectively, the "**Purchased Assets**"), including, without limitation, the following:

1

(a) all inventory, finished goods, raw materials, work in progress, packaging, supplies, parts and other inventories as set forth on Schedule 1.01 ("**Inventory**");

(b) all right, title, and interest in, to, and under those contracts, agreements, leases, instruments, or other written binding commitments or arrangements to which the Seller is a party or is otherwise bound and that affect or relate to the Purchased Assets set forth on Schedule 1.01 to the extent Buyer agrees to assume the same pursuant to the terms hereof (the "**Assigned Contracts**");

(c) all intellectual property, registered or unregistered, including, but not limited to, all patents, trademarks, trade names, service marks, copyrights, and registrations for the foregoing, and websites, domain names, telephone numbers, business email addresses and software (the "**Intellectual Property Assets**"), including but not limited to those listed on Schedule 1.01;

(d) all furniture, fixtures, equipment, machinery, tools, vehicles, office equipment, supplies, computers, telephones and other tangible personal property (collectively, the "**Tangible Personal Property**") including but not limited to those listed on Schedule 1.01;

(e) all permits, including environmental permits, which are held by Seller and required for the conduct of the Business as currently conducted or for the ownership and use of the Purchase Assets, including those listed on Schedule 1.01;

(f) all rights to any Actions (as defined herein) of any nature available to or being pursued by Seller to the extent related to the Business, the Purchased Assets or the Assumed Liabilities (as defined herein), whether arising by way of counterclaim or otherwise;

(g) all prepaid expenses, credits, advance payments, claims, security, refunds, rights of recovery, rights of set-off, rights of recoupment, deposits, charges, sums, and fees (including any such item relating to the payment of taxes);

(h) all of Seller's rights under warranties, indemnities and all similar rights against third parties to the extent related to any Purchased Assets;

(i) all insurance benefits, including rights and proceeds, arising from or relating to the Business, the Purchased Assets, and the Assumed Liabilities;

(j) originals, or where not available, copies, of all books and records, including, but not limited to, books of account, ledgers and general, financial and accounting records, machinery and equipment maintenance files, customer

2

lists, customer purchasing histories, price lists, distribution lists, supplier lists, production data, quality control records and procedures, customer complaints and inquiry files, research and development files, records and data (including all correspondence with any Governmental Authority (as defined herein), sales material and records (including pricing history, total sales, terms and conditions of sale, sales and pricing policies and practices), strategic plans, internal financial statements, marketing and promotional surveys, material and research and files relating to the Intellectual Property Assets; and

(k) all goodwill and the going concern value of the Business:

**Section 1.02 Excluded Assets.** Notwithstanding the foregoing, the Purchased Assets shall not include the following assets (collectively, the "**Excluded Assets**"):

(a) any claims pursuant to §§ 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code ;

(b) any Purchased Assets that Buyer advises Seller in writing at or before the Closing it does not desire to purchase;

(c) unexpired leases and executory contracts that are not Assigned Contracts;

(d) the corporate seals, organizational documents, minute books, stock books, tax returns, books of account or other records having to do with the corporate organization of Seller.

The Purchased Assets of Seller to be sold, conveyed, transferred, assigned, set over, and delivered to Buyer at the Closing and the purchase and sale of the Purchased Assets and other transactions contemplated by this Agreement are sometimes hereinafter collectively called the "**Transactions**".

**Section 1.03 Assumed Liabilities.** Subject to the terms and **conditions** set forth herein, Buyer shall assume and agree to pay, perform and discharge only the following liabilities of Seller (collectively, the "**Assumed Liabilities**"), and no other liabilities:

(a) all liabilities in respect of the Assigned Contracts.

(b) Those obligations set forth in Section 2.01 of this Agreement.

**Section 1.04 Assignment of Executory Contracts and Rights.** Seller shall, pursuant to § 365 of the Bankruptcy Code, assume and assign to Buyer the Assigned Contracts set forth on ScheduleSection 1.01(b), as amended or supplemented from time to time by Buyer with due notice to any affected parties, without impairment or abridgement and free and clear of all Encumbrances. Buyer agrees, effective as of the Closing Date, to assume all duties, obligations, and liabilities of

3

Seller under the Assigned Contracts, to the extent that Buyer has elected to assume the same. Notwithstanding anything in this Agreement to the contrary, to the extent that any assignment of any Assigned Contract shall require the consent of any other party thereto (and such consent is not obtained or excused by the Court), this Agreement shall not constitute a contract to assign the same to the extent that an attempted assignment would either constitute a breach thereof or in any way adversely affect the rights or obligations of Buyer or Seller thereunder. If any such consent is not obtained or excused, Seller shall cooperate in any reasonable arrangement requested by Buyer designed to provide for Buyer the benefit, monetary or otherwise, of any such Assigned Contract, including enforcement of any and all rights of Seller against the other party thereto arising out of breach or cancellation thereof by such party or otherwise.

**Section 1.05 Title to Purchased Assets Free and Clear of Liens; No Assumption of Liabilities.** The Purchased Assets shall be sold pursuant to an Order of the Court ("**Sale Order**"), the form and content of which shall be approved by the Court. The Purchased Assets shall be transferred and conveyed free and clear of all Encumbrances, and all persons and entities holding Encumbrances with respect to the Purchased Assets are barred from asserting such Encumbrances against the Purchased Assets or Buyer, its successors, or assigns. Furthermore, other than the assignment of Seller's obligations under the Assigned Contracts, Buyer does not assume, undertake, accept, be bound by, or responsible for, any liabilities or obligations of Seller, whether due or to become due, absolute or contingent, direct or indirect, asserted or unasserted, known or unknown, choate or inchoate. In addition, Buyer shall not be responsible for any operating expenses incurred by Seller prior to the Closing Date (including, but not limited to, employee wages, compensation of any nature, taxes (including income, gross receipts, excise, property, sales, transfer, franchise, payroll, withholding, and social security), charges, fees, levies, penalties, assessments, utilities, rentals, and benefits of any nature (*e.g.*, unused paid time off or accrued vacation)), except as to any Assigned Contracts. These operating expenses shall be the Seller's or its estate's financial responsibility. To the extent such operating expenses are incurred both pre and post-Closing Date, Seller or its bankruptcy estate shall be financially responsible for all incurred pre-Closing Date operating expenses, and Buyer shall be financially responsible for all incurred post-Closing Date operating expenses, unless otherwise agreed to in writing by Seller and Buyer.

## ARTICLE II

## PURCHASE PRICE AND PAYMENT

**Section 2.01 Purchase Price.** The aggregate purchase price for the Purchased Assets shall be **$875,000.00** (the "**Purchase Price**") and consist of the consideration listed below, plus the assumption of the Assumed Liabilities. Buyer shall pay the Purchase Price, less any amounts remaining from cash, cash accounts or cash collateral after satisfying administrative requirements as specified in the Case, at Closing as provided in Section 3.02.

**Section 2.02 Allocation of Purchase Price.** As soon as practicable, and in any event within 20 days after the Closing, Buyer shall deliver a proposed allocation of the Purchase Price among the Purchased Assets in accordance with Section 1060 of the Internal Revenue Code of

1986, as amended, and the Treasury Regulations promulgated thereunder. Buyer and Seller agree to confer in good faith in an effort to agree on such proposed allocation.

## ARTICLE III

## THE CLOSING

**Section 3.01  Closing.**  Subject to the terms and conditions of this Agreement, the consummation of the Transactions (the "**Closing**") shall take place at a location agreed upon by the parties on or before seven days after effectiveness of the Sale Order as defined in Section 6.05 below, provided that any stay of the effectiveness of the Sale Order imposed, including that set forth in Federal Rules of Bankruptcy Procedure 6004(f), has been waived or terminated, unless the Closing date is extended by the mutual agreement of the parties. The date on which the Closing is to occur is herein referred to as the "**Closing Date**". The parties may close the transaction remotely pursuant to mutual closing instructions circulated prior to the Closing Date.

**Section 3.02   Closing Deliverables.**

    (a)  At the Closing, Seller shall deliver to Buyer the following:

        (i)  one or more bills of sale in form and substance satisfactory to Buyer (the "**Bill of Sale**") and duly executed by Seller, transferring in the aggregate the Tangible Personal Property included in the Purchased Assets to Buyer;

        (ii)  an assignment and assumption agreement in form and substance satisfactory to Buyer (the "**Assignment and Assumption Agreement**") and duly executed by Seller, effecting the assignment to and assumption by Buyer of the Purchased Assets and the Assumed Liabilities;

        (iii)  assignments in form and substance satisfactory to Buyer and duly executed by Seller, transferring all of Seller's right, title and interest in and to the Intellectual Property Assets to Buyer;

        (iv)  a certificate, attesting to the fact that all representations and warranties of Seller set forth in this Agreement shall be true and correct in all material respects through the date of Closing, all conditions of Seller have been satisfied and/or waived, and none of Seller's covenants have been breached through the date of Closing;

        (v)  all Assigned Contracts, copies of books, and records of Seller;

5

      (vi)    physical control of all the Purchased Assets;

      (vii)    filed releases of all Encumbrances against the Purchased Assets, including any UCC-3 termination statements; and

      (viii)    such other customary instruments of transfer, assumption, filings or documents, in form and substance reasonably satisfactory to Buyer, as may be required to give effect to this Agreement.

(b)    At the Closing, Buyer shall deliver to Seller the following:

      (i)    Balance of Purchase Price by wire transfer of immediately available funds to an account designated in writing by Seller to Buyer;

      (ii)    the Assignment and Assumption Agreement duly executed by Buyer.

## ARTICLE IV

## REPRESENTATIONS AND WARRANTIES OF SELLER

Seller warrants and represents to and covenants with Buyer as follows:

**Section 4.01    Organization of Seller.** Seller is duly organized, validly existing, and in good standing under the laws of the State of Delaware and has full corporate power and authority to conduct its Business as presently being conducted and to own its assets.

**Section 4.02    Authorization.** Seller, subject to Bankruptcy Court approval, has all necessary corporate power and authority and has taken all company action necessary to enter into this Agreement, consummate the transactions contemplated hereby, and to perform its obligations hereunder. This Agreement has been duly executed and delivered by Seller, and subject to the entry and effectiveness of the Sale Order, constitutes a legal, valid and binding obligation of Seller enforceable against Seller in accordance with its terms and conditions.

**Section 4.03    No Claims.** Except as disclosed in the Case, neither Seller nor the Purchased Assets are subject to any actions, suits, claims, investigations, hearings, or proceedings of any type pending (or, to the knowledge of Seller, threatened), that would in any way be binding on Buyer or interfere with the full use and enjoyment of the Purchased Assets or that affect Seller's ability to close the transactions contemplated hereby.

6

Section 4.04 **Right to Convey.** Seller, subject to Bankruptcy Court approval, has the right to convey the Purchased Assets, subject to any regulatory approvals as may be required, to Buyer, and at the Closing will convey to Buyer good and marketable title to the Purchased Assets free and clear of any and all Encumbrances.

Section 4.05 **No Violation or Breach.** The execution and delivery of this Agreement and the consummation of the Transactions do not and will not (i) violate, conflict with or result in a breach of or default under any of the terms, provisions or conditions of the organizational documents of Seller; (ii) violate any statute, regulation, rule ordinance, code, order judgment, write, injunction, decree or award, which violation would have a material adverse effect on the Business or financial condition of Seller or Seller's ability to consummate the Transactions; or (iii) result in any imposition of any encumbrance, restriction or charge on the Purchased Assets.

Section 4.06 **Consents.** Except for the Sale Order, no consent, approval, authorization, order, designation or declaration of any Governmental Authority or other person is required to be obtained, nor is any filing or registration required to be made, for the consummation of the Transactions.

Section 4.07 **Compliance with Law.** Seller, in the conduct of the Business, is in compliance with all applicable Laws, except where the failure to comply would not have a material adverse effect on the Business or financial condition of the Seller. Seller has not received any written notice to the effect that or otherwise been advised that it is not in compliance with any of such laws, where the failure to comply would have a material adverse effect on the Business or financial condition of the Seller.

Section 4.08 **Tax Returns and Taxes.** Seller has properly filed, or will cause to be filed, all federal, state, local, and foreign income, sales, use, property and other tax returns, reports, and declarations that are required by applicable law to be filed by it and that relate to or in any way affect the Purchased Assets or the Business of the Seller, and has paid, or made full and adequate provision for the payment of, all federal, state, local, and foreign income, sales, use, property and other taxes properly due for the periods covered by such returns, reports, and declarations, or will make such provision at the time of Closing.

Section 4.09 **Full Disclosure.** No representation, warranty or statement given by the Seller in this Agreement or in response to inquiries made during the Buyer's "due diligence" investigation of Seller is untrue or omits to state a material fact necessary in order to make such representations, warranties or statements contained herein not misleading.

## ARTICLE V

## REPRESENTATIONS AND WARRANTIES OF BUYER

Section 5.01 **Organization.** Buyer is a limited liability company duly organized, validly existing in good standing under the laws of the state of Colorado and subject to Bankruptcy Court

7

approval has all necessary corporate power and authority to perform this Agreement and the Transactions.

Section 5.02  **Authority.**  Buyer, subject to Bankruptcy Court approval, has all requisite power and authority to enter into this Agreement and to perform its respective obligations hereunder. Prior to the Closing, the execution, delivery and performance of this Agreement will have been duly and validly authorized and ratified by all necessary corporate and other action on the part of Buyer and no other proceedings on the part of Buyer are necessary to authorize this Agreement and the transactions contemplated hereby.

Section 5.03  **Validity.**  Upon execution and delivery of this Agreement by Buyer, this Agreement is the valid and binding obligation of Buyer enforceable against Buyer in accordance with its terms, subject only to Bankruptcy Court approval.

Section 5.04  **Litigation.**  Except for the Case, the Buyer acknowledges that there are no actions, suits, claims, investigations, hearings, or proceedings of any type pending (or, to the knowledge of Buyer, threatened), at law or in equity, that might affect Buyer's ability to close the transactions contemplated hereby.

Section 5.05  **Disclaimer.**  Buyer acknowledges that in making the decision to enter into this Agreement and to consummate the transactions contemplated hereby, Buyer has relied solely on its own independent investigation of the Business and the Purchased Assets, the express written representations, warranties, and covenants in this Agreement, and Seller's filings with the Court, including its Schedules, Statement of Financial Affairs, and monthly debtor in possession reports. Except as to Buyer's reliance on the foregoing, Buyer acknowledges that (i) it has not relied, in whole or in part, on any information contained in documents, materials, or other information provided to it by, or on behalf of, Seller; and (ii) Seller is not making any representations or warranties with respect to (a) any such documents, materials or other information, other than, in each case, as set forth in this Agreement or (b) the value, condition, merchantability, marketability, profitability, suitability or fitness for a particular use or purpose of the Purchased Assets.

Section 5.06  **High and Better Offers.**  Buyer acknowledges that it understands that this agreement is subject to high and better offers as contemplated by the Bid Procedures and until the Bankruptcy Court enters the Sale Order.

## ARTICLE VI

## COVENANTS OF SELLER

Section 6.01  **Preservation of Property.**  Seller will preserve the Purchased Assets and not take or allow any action that would materially and adversely impact the current condition

thereof. All risk of loss of the Purchased Assets shall remain with Seller until completion of the Closing.

**Section 6.02 Insurance.** Seller will continue to maintain in full force and effect all policies to protect the value of the Purchased Assets. Seller will use commercially reasonable efforts to cause the Buyer to be named as the beneficiary of the Seller's property, general liability, equipment and any other insurance policies. Buyer will pay the cost of such policies after Closing.

**Section 6.03 Cooperation of Agents.** Seller will instruct its auditors, employees, and agents to allow Buyer and its agents full access to any and all workpapers and to confer with any and all persons in connection with Buyer's investigation of Seller and the Purchased Assets.

**Section 6.04 Notification of Buyer.** Seller will promptly notify Buyer in writing of any threatened lawsuit, claim or any material adverse change or any projected or threatened material adverse change in in the condition of the Purchased Assets.

**Section 6.05 Notice.** Seller shall provide such notices of the Transactions as are required by the Bankruptcy Code or applicable Rules of Bankruptcy Procedure to all creditors of Seller and parties in interest, including without limitation adequate and sufficient notice to all parties having Liens of record on the Purchased Assets or any portion thereof.

**Section 6.06 Conduct of Business During Closing Period** From the date hereof through the Closing Date, Seller shall use its best subjective efforts to not (i) take, or agree or commit to take, any action that would make any representation or warranty of Seller under this Agreement inaccurate in any respect from the date hereof through the Closing Date; or (ii) omit to take, or agree or commit to omit to take, any action necessary to prevent any representation or warranty of Seller under this Agreement from being inaccurate in any respect from the date hereof through the Closing Date. In addition, Seller agrees that from the date hereof through the Closing Date, Seller shall use its best subjective efforts to continue to carry on the Seller's Business in the ordinary course and substantially in accordance with past practice and will not take any action inconsistent therewith or with the consummation of the Closing, without the prior written consent of Buyer. Without limiting the generality of the foregoing, Seller shall use its best subjective efforts to: (a) maintain all licenses, provider agreements, permits, franchises, rights and privileges, and contracts necessary to ensure the continued operation of the Business compliant with all laws, rules, and regulations applicable thereto; (b) use all reasonable efforts to maintain the Purchased Assets in substantially the state of repair, order, and condition as on the date hereof (reasonable wear and tear excepted); (c) fully pay all payroll obligations, payroll taxes, and benefits related thereto; (d) use its best efforts to keep intact the present business organization of the Seller, keep available the services of the Seller's present officers, employees, and agents and use its best efforts to preserve the Seller's present relationships with all customers, clients, accounts, suppliers, and other entities or persons having business relationships with the Seller; (e) maintain its good standing and qualification to do business in all jurisdictions where it is presently required to be qualified to do business in connection with the Business of the Seller; (f) not assume and/or reject any executory contracts or unexpired leases except as a part of the Transaction; and (g) otherwise operate the Business in the ordinary course.

Section 6.07  **Discharge of Business Obligations.**  From and after the Closing Date, except in relation to the Assigned Contracts, Seller shall use its subjective best efforts to pay and discharge, in accordance with its past practice and subject to its Bankruptcy Case, all obligations and liabilities incurred by Seller prior to the Closing Date in respect of the Purchased Assets or the Business.

Section 6.08  **Material Misrepresentations or Omissions.**  Notwithstanding anything herein to the contrary, Seller has not (and will not) willfully or intentionally misrepresented or failed to disclose any material fact to Buyer.

## ARTICLE VII

## CERTAIN MUTUAL COVENANTS

Section 7.01  **Cooperation.**  After the Closing, each of Seller and Buyer shall use commercially reasonable efforts to provide to any other Party to this Agreement, any trustee or other bankruptcy estate representative or fiduciary and the United States Trustee (the "**Requesting Party**") such records and information and to make available to the Requesting Party such employees or other personnel, in each case as may be reasonably requested in writing by the Requesting Party, for the purpose of responding to governmental inquiries, making required governmental filings or defending or prosecuting any Action or other proceeding involving any Person other than the Party providing such information or records or making available such employees or other personnel (the "**Providing Party**") and in resolving all claims, preparing all Tax Returns, and handling all matters necessary to administer and close the Bankruptcy Case, including assisting the Requesting Party in winding down the bankruptcy estate of Seller, liquidating the Excluded Assets, pursuing or processing any Action with respect to the bankruptcy estate of Seller; provided, however, that no Providing Party shall be required to (i) provide information, records or employees or other personnel under circumstances which the Providing Party believes in its sole reasonable determination may waive privilege, confidentiality or a similar protection or expose it to material liability to any Person or may prejudice any legal interest of the Providing Party, or (ii) take any action that in the Providing Party's reasonable determination unreasonably interferes with its business. "**Action**" means any claim, action, cause of action, demand, lawsuit, arbitration, inquiry, audit, notice of violation, proceeding, litigation, citation, summons, subpoena or investigation of any nature, civil, criminal, administrative, regulatory or otherwise, whether at law or in equity.

Section 7.02  **Filings and Approvals.**

(a) Subject to the terms and conditions of this Agreement, each of the parties shall use all reasonable best efforts to take, or cause to be taken, all action and to do, or cause to be done, all things necessary, proper or advisable under applicable Laws and regulations to consummate the Transactions, including using reasonable best efforts to obtain all necessary or appropriate waivers, consents and approvals. Buyer shall make or cause to be made all filings and submissions under Laws applicable to Buyer, if any, as may be required for the consummation of the

Transactions. Seller shall make or cause to be made all such other filings and submissions under Laws applicable to any Seller, if any, as may be required for the consummation of the Transactions. Buyer and Seller shall coordinate and cooperate in exchanging such information and reasonable assistance as may be requested by either of them in connection with the filings and submissions contemplated by this Section 7.02. Buyer and Seller shall each promptly provide the other or their respective counsel with copies of all filings made by such Party with any Governmental Authority in connection with this Agreement and the Transactions. **Laws** means any statute, law, ordinance, regulation, rule, code, order, constitution, treaty, common law, judgment, decree, other requirement or rule of law of any Governmental Authority. **Governmental Authority** means any federal, state, or local government or political subdivision thereof, or an agency or instrumentality of such government or political subdivision, or any arbitrator, court or tribunal of competent jurisdiction.

(b) If a party receives a request for information or documents from any Governmental Authority with respect to this Agreement or any of the Transactions, then such party shall use its reasonable best efforts to make, or cause to be made, as soon as reasonably practicable, a response in substantial compliance with such request.

## ARTICLE VIII

## BUYER'S COVENANTS

**Section 8.01   Collusion.**  Buyer shall not collude with any other potential purchaser or interfere with the Seller's obligation to obtain the highest and best price for the Seller's assets.

## ARTICLE IX

## CONDITIONS TO CLOSING APPLICABLE TO BUYER

**Section 9.01**   The obligations of Buyer (including the obligation of Buyer to close the Transactions) are subject to the following conditions precedent, any of which may be waived in whole or in part by Buyer, provided that any such waiver shall be in writing and signed by Buyer:

(a) **No Proceedings.**  No proceeding or formal investigation shall have been commenced or threatened by any Governmental Authority or by any other person or entity which questions the validity or legality of any of the Transactions.

(b) **Satisfaction of Buyer and its Counsel.**  All proceedings to be taken in connection with the consummation of the Transactions, and all documents

11

incident thereto, and all documents received by Buyer related to the Business and the Purchased Assets, shall be reasonably satisfactory to Buyer and its counsel, and Buyer and its counsel shall have received copies of such documents as its counsel may reasonably request in connection with the Transaction.

(c) **Receipt of Documents**. All documents to be delivered by or on behalf of Seller to Buyer under this Agreement shall have been so delivered within the times specified herein, if any, prior to or at Closing.

(d) **Court Approval**. The Sale Order shall have been entered by the Court and the effectiveness of the Sale Order shall not be subject to any stay, whether by court order or operation of the Bankruptcy Code.

(e) **No Losses**. Prior the Closing Seller shall not have sustained any loss on account of fire, flood, accident or other calamity of such character that would materially impact the condition of the Purchased Assets, regardless of whether or not such loss was insured against.

(f) **Seller's Representations, Warranties and Covenants**.

(i) All representations and warranties of Seller made in this Agreement, or in any certificate delivered pursuant hereto, shall in all material respects be true and complete on and as of the Closing Date with the same force and effect as if made on and as of that date.

(ii) All of the terms, covenants and conditions to be complied with and performed by Seller at or prior to the Closing shall in all material respects have been complied with or performed thereby.

## ARTICLE X
## CONDITIONS TO CLOSING APPLICABLE TO SELLER

**Section 10.01** The obligations of Seller hereunder (including the obligation of Seller to close the Transactions) are subject to the following conditions precedent, any of which may be waived in whole or in part by Seller, provided that any such waiver shall be in writing and signed by Seller and is consistent with all applicable laws:

(a) **Court Approval**. The Sale Order shall have been entered and the effectiveness of the Sale Order shall not be subject to any stay, whether by court order or operation of the Federal Rule of Bankruptcy Procedure 6004(g).

(b) **Buyer's Representations, Warranties and Covenants**.

12

    (i) All representations and warranties of Buyer made in this Agreement, or in any certificate delivered pursuant hereto, shall in all material respects be true and complete on and as of the Closing Date with the same force and effect as if made on and as of that date.

    (ii) All of the terms, covenants and conditions to be complied with and performed by Buyer at or prior to the Closing shall in all material respects have been complied with or performed thereby.

## ARTICLE XI
## TERMINATION

  **Section 11.01 Termination of Agreement.** This Agreement may be terminated under any of the following circumstances by notice given prior to consummation of the Closing:

   (a) Each of Buyer and Seller shall have the right to terminate if the other party materially breaches any of its representations or warranties or covenants or other obligations under this Agreement.

   (b) Buyer shall have the right to terminate this Agreement if any of the conditions to Closing set forth in Article IX hereof has not been timely satisfied or if Buyer reasonably determines that any such condition is not capable of being timely satisfied.

   (c) Seller shall have the right to terminate this Agreement if any of the conditions to Closing set forth in Article X hereof has not been timely satisfied or if Seller reasonably determines that any such condition is not capable of being timely satisfied.

   (d) Seller receives a higher and better offer that is approved by the Bankruptcy Court before entry of the Sale Order.

## ARTICLE XII
## MISCELLANEOUS

  **Section 12.01 Entire Agreement.** This Agreement, together with all attachments hereto (or to be attached hereto) and the Bid Procedures, constitutes the entire agreement between the parties pertaining to the subject matter of this Agreement, and (except as otherwise may be expressly provided herein) supersedes any and all prior and contemporaneous agreements, understandings, negotiations, and discussions with other parties, whether oral or written, and is intended also as a complete and exclusive statement of the terms of this Agreement, and there are no warranties, representations, statements or other agreements between the parties in connection with the subject matter of this Agreement, except as specifically set forth in this Agreement or in documents that are referred to herein. No amendment, supplement, or modification of this Agreement shall be binding unless executed in writing by both parties hereto and approved by the Bankruptcy Court. No waiver of any provision of this Agreement shall be deemed or shall

constitute a waiver of any other provision of this Agreement, whether or not similar, nor shall such waiver constitute a continuing waiver unless otherwise expressly provided.

**Section 12.02 Modifications.** Any provision of this Agreement may be amended or waived if, and only if, such amendment or waiver is in writing and signed, in the case of an amendment, by Buyer and Seller or, in the case of a waiver, by the party against whom the waiver is to be effective except pertaining to the consideration hereunder.

**Section 12.03 Assignment.**

(a) Buyer may assign its rights or obligations under this Agreement, or any part thereof, without the prior written consent of Seller, to a direct or subsidiary of Buyer that is wholly-owned and/or controlled by Buyer, provided that no such assignment or delegation shall relieve Buyer of any of its obligations to Seller hereunder.

(b) Except as otherwise set forth in (i) of this section, neither party hereto shall have the authority to assign its rights or obligations under this Agreement.

(c) **Governing Law**. This Agreement is made pursuant to, and shall be construed and enforced in accordance with, the laws of the State of Colorado (except as preempted by United States federal and bankruptcy law, to the extent applicable), irrespective of the principal place of business, residence or domicile of the parties hereto, and without giving effect to otherwise applicable principles of conflicts of law.

(d) **Authority of Court**. The Court shall have exclusive jurisdiction to resolve any disputes with respect to this Agreement and the transactions contemplated hereby, including, but not limited to, any claims against the Purchased Assets.

(e) **Notices**. All notices, requests or demands under this Agreement must be in writing and sent (a) in person, (b) by certified or registered mail, (c) by overnight delivery carrier for next day delivery, (d) by telecopier (fax) or telegram, in each case to the address listed below (or if notice of a new address is given, the new address) or (e) by electronic mail transmission with delivery confirmation. Notice given in any other manner will not be considered delivered or given. A notice period will start or be treated as being given (i) the next business day after sent by overnight delivery, and (ii) the day the notice was delivered in person, sent by fax, telegram or electronic mail with a delivery confirmation.

If to Seller:

Brian Levin
Perky Jerky, LLC
4380 S. Syracuse Street, Suite 300
Denver, CO 80237

14

Email: brian@perkyjerky.com

With a copy to:

Aaron Garber
Wadsworth Garber Warner Conrardy
2580 West Mail Street, Suite 200
Littleton, CO 80120
Phone: (303) 296-1999
Email: agarber@wgwc-law.com

If to Buyer:

RS2 LLC
5755 Oak Creek Ln
Greenwood Village, CO 80121
Attention: Ryan Surroz
Telephone No.: (303) 304-6523
Email: mrsurroz@outlook.com

With a copy to:

Hoffman Nies Dave & Meyer LLP
5350 S. Roslyn St., Suite 100
Greenwood Village, CO 80111
Attention: Nicole Nies, Esq.
Telephone No. (720) 974-9422
Email: nnies@hn-colaw.com

**Section 12.04 Counterparts.** This Agreement may be executed in one or more counterparts, each of which shall be an original, but all of which shall constitute but one Agreement.

**Section 12.05 Brokerage Fees.** This transaction is subject to a brokerage fee to be paid by Seller as approved in the Case.

**Section 12.06 Further Assurances.** On and after the Closing Date, the parties will take all appropriate action and execute all documents, instruments or conveyances of any kind that may be reasonably necessary or advisable to carry out the provisions hereof and to consummate the Transactions.

*[Signature Page Follows]*

IN WITNESS WHEREOF, Seller and Buyer have each caused this Agreement to be duly executed on their respective behalves by their duly authorized officers, to be effective as of the day and year first above written.

BUYER:

RS2, LLC

By: _____
Name: RYAN SURROZ
Its: Managing Member


SELLER:

PERKY JERKY, LLC
debtor-in-possession

By: _____
Brian Levin
Its Managing Manager

16